Good morning, your honors. May it please the court, Michelle Barth on behalf of the appellant Mr. Kwame Nsedu. The central question before for the court is whether the government met its evidentiary burden improving the federal benefit requirement to the jury. In this case, the government presented no evidence of the structure, operation, and purpose of any federal program that nor did it present any evidence of the intended use of that federal program's funds at the local level. So just so we're clear, your view is that the articulation in Fisher has to be given as a jury instruction and the jury has to make that finding in every case? Yes. And it's not just my... Some juries might agree with the Supreme Court that Medicare payments constitute such a benefit and others might disagree with the Supreme Court and disagree with each other. And that's okay. That's federalism. No, I wouldn't say that's federalism. In each case, we're not asking the jury to define what that federal program is. What we're asking is the jury to evaluate the relationship between the federal program and its intended use at the local level. Now, none of those questions are legal. Didn't we in United States v. Bahel treat that as a question of law for a court to decide? No, Your Honor. In Bahel, the defendant specifically argued that he was improperly convicted because the district court lacked subject matter jurisdiction, which is a purely legal issue. The question was whether the benefits under the United Nations Participation Act qualified as benefits under Section 666B, and it was treated as a legal question. It was treated as a legal question for determining whether or not the court had subject matter jurisdiction. The court wasn't asked to decide whether the government subsequently met its burden at a jury trial. That's not really subject matter jurisdiction, right? The Supreme Court has talked about how that's sometimes people use that word when they mean just it's an element of the offense. What Fisher describes is a relationship between federal programs and their use at the local level. It is that relationship that's subject to both a factual determination and a legal determination. It's an element of the offense, right? That's correct. It's an element of the offense. I mean, just to follow up on what Judge Sullivan asked before, on your theory, different juries could conclude that the same Federal program did or did not constitute benefits for the statute? If it's brought in terms of a sufficiency of the evidence context, yes, because none of these questions are per se legal questions set in some kind of statutory stone. Are you aware of any case where a judge has instructed a jury along the lines of what you're proposing? For a 666 case, has anybody ever taken the language from Fisher and given that to the jury and said, okay, you guys figure it out? Well, I don't know specifically in the case of, say, Bravo Fernandez in the First Circuit or in the case of McLean in the Eleventh Circuit whether or not a judge has conferred the language in Fisher. However, we do know that the courts that have checked in on this issue, including McLean and Bravo Fernandez, have all treated the Federal benefit element as a mixed question of law and facts subject to a jury determination. And they do so for good reason, because it is not enough that the government proved that the organization received Federal funds. Rather, the government must prove a Federal benefit was conferred. And a Federal benefit is only found after certain facts are established. By the way, did the defendant ask for such an instruction? No. The defendant did not ask for such an instruction. But the jury instruction issue is an issue that is separate and apart from the sufficiency of the evidence issue. Is this on this point that my colleagues have been asking me about? This is plain error review? Not on the sufficiency of the evidence issue. On the jury instruction issue, it would be. But the sufficiency of the evidence issue is not a plain error issue. The defendant preserved the claim that the evidence was insufficient before the district court. And the government concedes. Insufficient. Go ahead, because I'm going to ask exactly what you're going to ask. Go ahead. Insufficient for what? Insufficient on all elements and all counts of the offense. And it is this Court's long-held precedent that the defendant need not specify the ground of the Rule 29 motion in order to preserve a sufficiency claim for appeal. That's been. The position that you're saying that the evidence was insufficient is sufficient to take out of the realm of plain error review your contention that federal benefit is a factual matter for a jury? Yes. The federal benefit analysis is a factual matter for the jury. A federal benefit. You preserve that by making a generalized objection to the sufficiency of the evidence. That's correct. And that's been this Court's long-held precedent that a defendant need not specify the ground of the Rule 29 motion in order to preserve the claim of sufficiency on appeal. The argument I'm making is just an argument in support of a claim. And it's also reflected in what happened below before the district court. At appendix 978 defendants trial counsel said at the close of the government's case. Yes, your honor. We do have a Rule 29 motion to make the short version is that we move pursuant to Rule 29 to dismiss each and every count of the indictment on the grounds that the government has presented legally insufficient evidence to sustain them. I could state a more developed Rule 29 motion, but I and then the court cut him off. We reject the argument that the jury should have been instructed on the on the Fisher language. The sufficiency argument fails. No, your honor. It doesn't fail because regardless of whether the trial attorney requested the perfect instruction that unpacked all of the elements for the court. The government still bears the burden of proving the federal benefits requirement in its case. And I have about seven seconds left and I'd like to reserve my remaining time for rebuttal. Good morning. I represent Roxanna in say do and I do have a sufficiency argument that's specifically preserved. This is a very busy record and it's very document heavy. I've set forth all the relevant details of my claim in the brief and I know that the government hasn't hasn't complained that I've left anything out. There are two main themes that the government raises in opposition to this sufficiency argument. One is the mrs. Insiders performance of services in order to earn the money that was given to her over this long period of time. The government points to two snippets of testimony in their brief on pages 32 and 33. One of them is they claim that the board chairman, Mr. Asaka was unaware that Mrs. Insider performed any work at UBA after she left her job in 2007 and went to Ghana and they cite a page of the record transcript 366. In fact, that is not what that page of the record states. The questioning of the of the chairman at that point was about whether he had been told at in 2007 that Mrs. Insider had left and he said no. She didn't tell me but her husband did and then I also learned from other people that she wasn't around. He never said that he that he was unaware that she ever performed any work after 2007 and even if he had been asked that question, which he wasn't, it would not be surprising if he said no since he was virtually never there. He was the board chairman. They had meetings once a year. He specifically said he left basically everything up to Mr. Insider and he didn't have any hands-on role in the management. The next snippet of testimony the government relies on for Mrs. Insider's performance of services is the testimony of Ms. Mayrant, who was the director of one of the centers. Government presented evidence that Ms. Insider falsified invoices from a shell company to about services she purportedly rendered to UBA? No, Your Honor. That is with respect to the allied home services company that you're talking about, right? Right. But wasn't that evidence that she was involved in a scheme and the invoices were falsified? Well, but the in-faces were falsified but there's no evidence that she participated in that. With respect to allied, and I've detailed this at great length in my brief, Mr. Insider was the one who signed all of the checks to allied. He was the one who filled in the payee of all of the checks to allied. He was the one who endorsed all of the checks. Was there evidence that she used some of the funds that she got for personal expenses? Well, that was the allied bank account, but as I also point out in the brief, there was a lot of money that was deposited in that account that had nothing to do with UBA. Thousands and thousands of dollars. These specific arguments were made to the jury, right? These specific arguments were not made to the jury. I did a very detailed review of the proof and if you look at the defense motion and the judge's decision, it's much sparser than I've presented to this court. But back to her performance of services on her own behalf to the senior centers, Ms. Mehrant herself testified to more than the government stated in their brief. She said that she only recalled Ms. Insider being at her center for about six months, once or twice a week. But in fact, she also said that after the nepotism meeting in 2012, where Ms. Insider's employment was discussed with the Department for the Aging, that Ms. Mehrant believed she saw Ms. Insider at the three other centers as well. The nepotism meeting was called for by the Department of the Aging because there had been a complaint that Ms. Insider was working a full 35-hour week at one of the centers. There was also evidence that there was consulting agreements that were signed, that were found with a search warrant, that she was being paid as an independent consultant to work at all four centers. All of that evidence and she endorsed all the checks that were made out to her and none of them were made out to her when she was in Ghana. So the theme of the government that this was a low show job, which is their quote, is actually not supported by the record. There's much more evidence in the record that she worked for these services and there's certainly evidence that she was more than competent to do so. But I mean, it sounds like you're making your jury address now when you say there was more evidence of what you're arguing than what the jury concluded. But the standard for overturning a jury verdict on insufficiency of the evidence grounds requires you to establish that no reasonable jury could reach this conclusion. Yes, Your Honor, but this Court has held many times that it's not enough for the prosecution to adduce meager evidence of guilt. It has to be substantial evidence and I'm just pointing out that there's a lot more evidence in the record that belies the government's claim that she did not honestly earn this money. And again, the money she earned was over a many-year period. It was $195,000 over this long period. And with respect to the Allied account, again, her husband was in charge of that. The bank statements were mailed to him only to his name at their house. He was the one that asked the bookkeeper to make the Allied income tax returns, which understated the income, and he supplied all the information to the bookkeeper in order for those returns to be prepared. So he is all over the Allied payments. And there's no hands-on evidence that Mrs. Ensaydu was involved in any of that. So I urge Your Honors to separate the two defendants here and to look simply at the evidence of what Mrs. Ensaydu did and the reasonable inference that her husband was the mastermind of this scheme and that she earned money doing things that she was competent to do and did not know that he was making payments to their son or to Allied. I'm not even in this prison of a felony. No, not in the prison of a felony. Okay. Thank you. We'll hear from the defense attorney. May it please the Court, my name is Eli Mark. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, and I also represent the United States below at trial. As an initial matter, the district court properly instructed the jury on the defendant did not object to that instruction, and the court reviews that for clear error, for plain error, Your Honors. That instruction largely tracked the statute and the requested addition that defendants now make that there should be an additional instruction on the structure, operation and purpose. The new instruction ought to just track the language from Fisher. That's basically the argument, right? Correct. So? And so, a number of points, Your Honor. First, there is no evidence that that instruction has ever been given before. Two is, this is definitely a legal inquiry. It was a legal inquiry for the Supreme Court in Fisher when they considered whether there were federal benefits there. It was a legal inquiry for this court in Bahel when the court considered whether there were benefits that were given to the UN. And as Your Honors noted, it would, that inquiry of sort of a statutory structure and a connection of funds to a program is necessarily a legal inquiry, and it would lead to inconsistent results if that could then be argued differently. Essentially, that litigants could attempt to argue to a jury something that is contrary to what the Supreme Court or the Second Circuit has decided. So, on that first matter, there was no error in the jury instruction, let alone any plain error. The second issue was whether there was sufficient evidence as to there being a federal benefit here. There was definitely evidence in the record that indicated that UBA received significant funds, hundreds of thousands of dollars of federal funds. The programs that received it for, under the grants that were provided. So, there was sufficient evidence. And as we detail in our brief, even if the court was to consider whether the question of whether there was evidence of the structure, operation, and purpose of the program and the nature of those payments were to be considered a factual question for the jury, there was more than sufficient evidence for the court to make that conclusion based on the record here. What do you make of this First Circuit case that was cited in Appellant's letter? So, Bravo-Fernandez, first, to the extent that the First Circuit considered this might be some sort of issue for the jury that's contrary to Second Circuit law. Second, what's particularly noteworthy there is in the discussion of what is sufficient for federal benefit, the First Circuit sort of took the government to task for just saying, well, $10,000 in federal funds is enough. That was all that was showed in the second trial, and Bravo-Fernandez was the third appeal in that case. That is not what was the jury instruction here, and that was not what the evidence was here. It was more than just that there was funds. There was evidence of programs and grants, what those were, how they were distributed through the city, and that those were critical to the purpose of UBA, the organization here. And the First Circuit in Bravo-Fernandez sort of looked back at, since it was a retrial, what was proved at the initial trial, and they actually said, well, that minimal evidence there would have been sufficient, but the second go-around, the government just didn't even produce that minimal bit of evidence. They just said $10,000 of funds, and that wasn't enough. So even in the view of Bravo-Fernandez and the First Circuit of, well, what is enough on their view, there was more than sufficient evidence in this record, such that I would submit that the First Circuit would have held that there was sufficient evidence here. Do you want to speak to Roxanne Insadu and the sufficiency of the evidence? It's been suggested that you've mischaracterized the evidence, that you didn't make false statements or didn't lie, and that, well, go ahead. Yes, Your Honor. First, essentially what Appellant here has essentially argued is that all inferences should be rendered in the favor of her on appeal. That's plainly not the standard. The standard here is all inferences have to be rendered in favor of the government to support the jury's determination here. The government proved at trial through witness testimony, through documents that Roxanne Insadu received hundreds of thousands of dollars from UBA, both directly and through Allied. And viewing the evidence in the light most favorable of the government, there was only minimal evidence. What is the specific evidence as to Roxanne? As to Roxanne, yes. So first, she received hundreds of thousands of dollars, and the evidence was, at most, she did a few hours of work for a few months. At that point in time, in 2012, there was concerns about nepotism that were raised to the city. The chairman of UBA spoke with her, and there was also a meeting with the city at that time. That it was represented that she didn't receive money, and that was related to the city, and that was then sort of quelled the issue. Quite to the contrary, she had received more than $100,000 already, and she actually continued to receive money, and it's detailed in the special appendix and some of the charts, after the city basically said no go with her receiving any money, and it had been very clear to her. So she, we submit that the money that she received directly is evidence of embezzlement there, but also, as Judge Chin asked, about Allied. Allied was, she now wants to argue that she had no connection to Allied. It was just all her husband, but the evidence, viewed in the light most favorable to government, is that she, that was her company with her husband. She helped found the company. She was a signatory on the bank account. She wrote some of the checks from UBA with her husband to Allied. She spent money from Allied. She lied about Allied to, on her HAMP mortgage application to reduce the mortgage, a charge that she doesn't actually contest here. It was not included in their tax returns, and then there were false statements that were made to the New York State Attorney General's Charities Bureau about that. All of those are her statements and all evidence of her concealment of Allied, which is evidence that this money, and that she knew this money, was inappropriately obtained and embezzled from UBA, and that she did that with her husband. Unless your honors have any further questions, the government will rest on submission. Thank you. We'll hear rebuttal. Good morning again. The only courts that have checked in on this issue about whether this sufficiency claim is a matter of a mixed question of law and fact have universally determined that it is a mixed question  And that's because a federal benefit is only found after certain facts are established, which were not established in this case. We don't know what is the federal assistance program here, how that federal assistance program operated, how that program was structured. And none of these questions are legal questions that are set in some sort of statutory stone. These are fact-based determinations that may change from year to year, even quarter to quarter, depending on the federal program and the local organization in question. So these were funds dispersed under the Older Americans Act? Your honor, we don't, well, the government did offer a chart, and one in particular that ties to the center where Mr. Ncedu worked as the director. Were some of these funds under this federal statute called the Older Americans Act? At best, that chart offers the title of a federal program. So, yes, according to the title on the document, that is the title of a federal program. But this chart... And the defendants didn't contest whether these were federal funds at trial, right? Well, the defendant put the government on notice that its evidence was insufficient on this count. But even if the defendant didn't ask a single question about it, the chart doesn't tell us any of the facts that we need to determine if these funds constitute a federal benefit. How did the OAA operate? We have no evidence, no document, no testimony from any witness that establishes that. How was the OAA structured? We don't know that either. How did the DFTA receive funding from the OAA, and for what purpose? How was the DFTA supposed to disperse the OAA funds at the local level? These are factual questions, and it's a gaping hole in the government's case, and it's fatal to its prosecution. So, putting all of that aside, we're assuming that a title is good enough, if you accept the government's position. The government never argued that the titles of these federal programs, which were sent to the DFTA and then ultimately dispersed to the UBA, were intended for a purpose related to that title. And as we all know, titles can be misleading. Why don't you finish up? You're out of time. Thank you. So, Your Honor, we ask that these convictions be reversed, because the jurors could not fill in this evidence with extra record knowledge. Thank you. Thank you. Hello. The government has stated that one of the things held against my client is that she allegedly told Mr. Asaka that she had not worked for UBA all the years prior to that nepotism meeting. And they cite some testimony on page 34 of their brief. In fact, the testimony is not that. The meeting was called because Mr. Asaka wanted to send an engagement letter to Mrs. Ensai, just saying she wanted to be a nurse. Wasn't there testimony that she was working only a couple of hours a week, and yet she received hundreds of thousands of dollars? Yes, but Judge Chin. Not enough to support the jury's verdict. Because as I said, there is a lot more evidence in the record, affirmative evidence, that she worked much more than that one snippet of testimony that the government hangs their hat on. And I've already gone through that. But in any event, she never said to Mr. Asaka that she had never worked there prior to 2012. She was speaking about the $5,000 she was going to earn on the latest independent contractor contract that she'd signed. And I will just finally say this. Yes, I understand the standards of review for sufficiency claims. But if there is more evidence in the record than the government acknowledges, and my brief is full of it, then the jury can be considered unreasonable to make the determination that they did, that my client was guilty of intentionally embezzling money, by not considering all that extra evidence. So that's my summation point. Thank you. We'll reserve this.